UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALVIN R. BARNEY, II,

     Plaintiff,

v.                                        Case No. 3:18cv620-MCR-CJK

LEON M. BIEGALSKI, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on defendants' Motion to Dismiss Amended Complaint (doc. 17) and Motion to Take Judicial Notice (doc. 18). Despite being given ample time to do so, plaintiff has not responded to the motions. After reviewing the motions and the relevant law, the undersigned recommends that both motions be granted.

## BACKGROUND

On June 12, 2018, plaintiff filed the amended complaint, the operative pleading in this action. (Doc. 13). It names four defendants: Leon Biegalski, the Executive Director of the Florida Department of Revenue ("DOR"); Terry Rhodes, the Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"); Ann Coffin, Child Support Program Director for the DOR; and an "Unknown Supervisor" from the DOR's Crestview, Florida, office. The

amended complaint sets forth the factual allegations that follow, the truth of which is accepted for purposes of this Report and Recommendation.

In a Final Judgment dated May 11, 2000, the Okaloosa County Circuit Court ordered plaintiff to pay $460 a month for the support of two children he fathered with Angela Lovejoy.[1] (Doc. 13-1, p. 3-7). The circuit-court judge declared plaintiff indigent for purposes of an appeal in August 2000 (doc. 13-1, p. 23), but did not adjust plaintiff's child support obligations to account for his indigency. On December 30, 2000, plaintiff was ordered to pay child support for a third child he fathered with Ms. Lovejoy. (Doc. 18-1).[2] "Plaintiff struggled for years as it was extremely difficult to meet his child support obligation and still meet the necessities of life for himself." Because plaintiff failed to make the required payments, the state suspended his driver's license in 2001.

On January 17, 2003, the state court entered an order of commitment due to plaintiff's failure to pay child support. Plaintiff remained confined from January 17

---

[1] Plaintiff asserts: (1) the Final Judgment "does not find that Plaintiff had the present ability to pay child support, uncovered medical expenses, and attorneys fees"; and (2) "[i]n establishing support obligations, the state court used Plaintiff's gross income rather than his net income." (Doc. 13, p. 6). Plaintiff, however, does not allege the court failed to calculate the support payment in accordance with state law. In addition, the judgment indicates plaintiff was represented by counsel during the proceedings.

[2] Defendants' Motion to Take Judicial Notice requests that the court take judicial notice of court records related to the child support plaintiff is required to pay for the third child. Because "[a] district court may . . . take judicial notice of public records[,]" *Odion v. Google Inc.*, 628 F. App'x 635, 638 (11th Cir. 2015) (citations omitted), and plaintiff did not respond in opposition to the motion, it should be granted.

to June 3 of 2003 because he "was indigent and unable to pay the purge amount of $750.00." Plaintiff was jailed again from November 26, 2003, to February 25, 2004, due to his failure to pay child support and inability to pay a $1,000 purge amount.

In 2010, Ms. Lovejoy got married and moved away from Florida with the three children "without consent of the court and without consent of Plaintiff." As a result, plaintiff "had no contact and could not visit the children for years." In 2011, plaintiff's license was again suspended for failing to pay child support. In 2013, the license was "reinstated without a reason." The eldest two children reached the age of majority in January 2015 and February 2017. In August 2017, plaintiff saw "his children for the first time since 2010."

"The DOR reinstated Plaintiff's child support obligations on or about October 4, 2017." "The DOR filed a document in the record entitled 'Request to Redirect Payments to New Title IV-D Case.'" Although plaintiff did not receive a copy until 2018, the letter stated "the DOR is now providing Title IV-D child support services and that Plaintiff was to send support payments."

On November 16, 2017, plaintiff sent defendant Rhodes "a letter notifying her that his driver's license was about to be suspended and requested her to provide him an administrative hearing before his license was suspended." Rhodes, however, did not respond to the letter.

On December 5, 2017, the DOR mailed plaintiff a notice indicating it intended to notify consumer reporting agencies that plaintiff owed $80,854.67 in overdue child support.   On December 8, 2017, the DHSMV, at the direction of the DOR, entered an order notifying plaintiff his license would be suspended effective December 28, 2017, due to his failure to pay child support and arrearages.  Plaintiff "later discovered that the suspension was due to his alleged failure to pay child support and arrearages for" the third child he had with Ms. Lovejoy.

On February 15, 2018, the DOR mailed plaintiff a document titled "Appointment Notice."   The document indicated: (1) the DOR had received a request for child support services for the third child; (2) plaintiff currently owed $650 a month in child support, and $2,600 in past-due support; and (3) the DOR wanted to talk to plaintiff regarding the matter.  The third child reached the age of majority on April 11, 2018.

Based on the foregoing, plaintiff alleges defendants violated the Fourteenth Amendment and Florida law by suspending his license in December 2017 without holding a contempt hearing or setting a purge amount.  As a remedy, he seeks damages as well as declaratory and injunctive relief.

DISCUSSION

Statute of Limitations

As an initial matter, the amended complaint contains allegations that date back to 2000. "Claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014) (*citing Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008)). The Eleventh Circuit has "held that the four-year statute of limitations under Fla. Stat. § 95.11(3) applies to § 1983 claims arising in Florida." *Ellison v. Lester*, 275 F. App'x 900, 901-902 (11th Cir. 2008) (*citing Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)). Because plaintiff initiated this action on April 10, 2018, any constitutional claims predating April 10, 2014, are barred by the statute of limitations. Thus, plaintiff cannot state a Fourteenth Amendment claim based on: (1) the alleged deficiency with the May 2000 Final Judgment; (2) the suspension of his license in 2001, 2011, and 2013; or (3) his incarceration in 2003 and 2004.

Due Process

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "To state a claim for a violation of procedural due process under § 1983, a claimant must allege three elements: (1) that he was deprived of a constitutionally-protected

liberty or property interest, (2) through state action, (3) as a result of constitutionally-inadequate process." *Evans v. Rhodes*, 735 F. App'x 986, 988 (11th Cir. 2018) (*citing Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).[3]

"A driver's license is a constitutionally-protected property interest," *id.* (*citing Dixon v. Love*, 431 U.S. 105, 112 (1977)), and the suspension of plaintiff's driver's license involved state action. Nevertheless, the suspension of plaintiff's license, and the post-suspension remedies afforded to him, were not constitutionally infirm.

Plaintiff argues defendants' suspension of his license did not comply with Fla. Stat. § 61.14 and thus violated his due process rights. The state statute provides:

> When a court of competent jurisdiction enters an order for the payment of alimony or child support or both, the court shall make a finding of the obligor's imputed or actual present ability to comply with the order. If the obligor subsequently fails to pay alimony or support and a contempt hearing is held, the original order of the court creates a presumption that the obligor has the present ability to pay the alimony or support and to purge himself or herself from the contempt. At the contempt hearing, the obligor shall have the burden of proof to show that he or she lacks the ability to purge himself or herself from the contempt. This presumption is adopted as a presumption under s. 90.302(2) to implement the public policy of this state that children shall be maintained from the resources of their parents and as provided for in s. 409.2551, and that spouses be maintained as provided for in s. 61.08. The court shall state in its order the reasons for granting or denying the contempt.

_____

[3] Plaintiff cannot state a substantive due process claim based on the suspension of his license. *See Burlison v. Rogers*, 311 F. App'x 207, 208 (11th Cir. 2008) ("When the right at stake—here, possession of a driver's license—is a right created only by state law, it is not a right that gives rise to substantive due process protection under the Due Process Clause.") (citation omitted).

Fla. Stat. § 61.14(5)(a); *see also Larsen v. Larsen*, 901 So. 2d 327, 328 (Fla. 4th DCA 2005) ("Because the suspension of a driver's license constitutes a civil sanction, the court must provide the contemnor with the opportunity to purge the sanction, and it must determine that the contemnor has the present ability to pay the purge amount.") (*citing Gregory v. Rice*, 727 So. 2d 251, 253-54 (Fla. 1999)).

Regardless of the procedures required by state law, plaintiff cannot establish a due process violation based on defendants' failure to hold a pre-suspension hearing addressing his ability to pay child support.[4]  *See First Assembly of God of Naples, Fla., Inc. v. Collier Cty, Fla.*, 20 F.3d 419, 422 (11th Cir. 1994) ("[T]he violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation."); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987) ("[T]he violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution.  If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes.").

"[P]rocedural due process violations do not become complete 'unless and until the state refuses to provide due process.'"  *McKinney v. Pate*, 20 F.3d 1550,

---

[4] Plaintiff cites *Gonzalez v. Reno* for the proposition that "[e]xecutive agencies must comply with the procedural requirements imposed by statute" and "must respect their own procedural rules and regulations."  212 F.3d 1338, 1349 (11th Cir. 2000) (citations omitted).  That case, however, involved judicial review of a federal agency's interpretation and implementation of federal law.  It did not involve an evaluation of whether a state agency's failure to comply with state law violated the Due Process Clause of the Fourteenth Amendment.

1562 (11th Cir. 1994) (*quoting Zinermon v. Burch*, 494 U.S. 113, 123 (1990)).  "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  *Id.* at 1557; *see also Cotton v. Jackson*, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000) ("[P]rocedural due process violations do not even exist unless no adequate state remedies are available."); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) ("*Hudson* made clear that as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred.") (*citing Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  Thus, even if the suspension of plaintiff's license on December 28, 2017, qualified as a procedural deprivation, he did not suffer a violation of his procedural due process rights unless and until the State of Florida refused to make available a means to remedy the deprivation.  *Cf. McKinney*, 20 F.3d at 1563 ("[E]ven if [plaintiff] suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation.") (emphasis in original).

Florida provides such remedies.  Plaintiff had multiple opportunities to challenge the amount of his child support payments and the suspension of his license. First, Fla. Stat. § 61.14(1)(a) provides that when "the circumstances or the financial

ability of [a parent] changes," the parent "may apply to the circuit court . . . for an order decreasing or increasing the amount of support . . . and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the" parent. In addition, the December 8, 2017, Order of Suspension informed plaintiff : (1) he could avoid the suspension by contacting the DOR's Support Enforcement Office in Crestview and "satisfy[ing] the requirements"; (2) he could "seek review of this order within 30 days of the date of this order by filing a petition for writ of certiorari as provided in section 322.31, Florida Statutes"[5]; and (3) he could "request a hearing at any Administrative Reviews Office to submit evidence [to a hearing officer] that [his] license should not be revoked, suspended, or cancelled." (Doc. 13-1, p. 36).

Plaintiff does not allege he sought a modification of his child support payment in circuit court or attempted to challenge the suspension of his license via the avenues outlined in the Order of Suspension. Instead, he claims he sent a letter to Rhodes on November 16, 2017—before receiving the Order of Suspension— "notifying her that his driver's license was about to be suspended and requested . . . an administrative hearing[.]" Plaintiff's failure to utilize the remedies described in the Order of Suspension does not demonstrate those remedies were inadequate. *See*

---

[5] *Cf. Autery v. Davis*, 355 F. App'x 253, 255 (11th Cir. 2009) ("[S]tate-court review of employment termination decisions qualifies as an adequate post-deprivation remedy.") (*citing McKinney*, 20 F.3d at 1563).

*Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("The fact that [plaintiff] failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy."). Plaintiff cannot state a claim for denial of procedural due process because the available state procedures were adequate to remedy any procedural deficiency in the initial suspension.

Plaintiff also makes several references to receiving inadequate notice of the suspension of his driver's license. (Doc. 13, p. 5-6, 11). Notice of a deprivation must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Although plaintiff alleges the December 8, 2017, Order of Suspension did not comply with Fla. Stat. § 61.13016, the Order was "reasonably calculated" to inform plaintiff of the timing and basis for the suspension, as well as advise him of the processes for avoiding or challenging the suspension. (Doc. 13-1, p. 36). Furthermore, plaintiff admits he knew his license could be suspended in November 2017. (Doc. 13, p. 15). Plaintiff's allegations of constitutionally-inadequate notice, therefore, are meritless.

In sum, the suspension of plaintiff's license did not violate his due process rights under the Fourteenth Amendment. *See Burlison*, 311 F. App'x at 209 ("Appellant has not shown that he was deprived of procedural due process in the suspension of his driver's license. He was clearly and unambiguously provided with

notice of the suspension; moreover, he was given twenty days to meet the requirements of the order and avoid the suspension. He was told that he could request an administrative hearing to challenge the suspension.") (footnote omitted).

Equal Protection Clause

Plaintiff cites the Equal Protection Clause as another basis for relief. (Doc. 13, p. 20-26). The allegations made in support of the equal protection claim, however, are identical to the allegations made in support of the due process claim. Plaintiff, therefore, has failed to state an equal protection claim. *See Austin v. City of Montgomery*, 353 F. App'x 188, 191 (11th Cir. 2009) ("To properly plead an equal protection claim, a plaintiff must allege that, through state action, similarly situated persons are treated disparately.") (citation omitted).

State Law

To the extent plaintiff alleges the suspension of his driver's license violated Florida law (e.g., Fla. Stat. §§ 61.13016, 61.14(5)(a)), the state-law claims should be dismissed without prejudice. Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citations

omitted). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (*citing L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). Plaintiff's state-law claims, therefore, should be dismissed without prejudice.

Accordingly, it is respectfully RECOMMENDED:

1.    That defendants' Motion to Take Judicial Notice (doc. 18) be GRANTED.

2.    That defendants' Motion to Dismiss Amended Complaint (doc. 17) be GRANTED. That plaintiff's federal claims be DISMISSED WITH PREJUDICE and plaintiff's state-law claims be DISMISSED WITHOUT PREJUDICE.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 12th day of February, 2019.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.